**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| FRANKLIN L. GIBBS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. CIV-09-427-FHS-KEW |
| ) | |
| WALTER DINWIDDIE, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner, an inmate in the custody of the Oklahoma State Penitentiary located in McAlester, Oklahoma, has filed this Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in Pittsburg County District Court Case Number CF-2004-29 for the crime of First Degree Murder and Possession of a Firearm, AFC. He sets forth the following grounds for relief:

> State court refused to adjudicate merits of any claims; their decisions were contrary to and involved unreasonable application of clearly established federal law. Claims relief for newly discovered evidence that was withheld by the state and sufficiency of evidence used by state courts in the determination was not established by due process was violated.

Respondent has submitted the following records to the court for consideration in this matter:

(1) Brief of Appellant filed in the Court of Criminal Appeals for the State of Oklahoma filed January 27, 2007.
(2) Brief of Appellee filed in the Court of Criminal Appeals of the State of Oklahoma filed October 25,

1

     2007.
- (3) Summary Opinion from the Court of Criminal Appeals State of Oklahoma filed May 23, 2008.
- (4) Order Affirming Denial of Application for Post-Conviction Relief filed April 2, 2009.
- (5) Four Volume Trial transcript.
- (6) The Original Record.
- (7) A copy of the trial exhibits State v. Gibbs, CF-04-29.
- (8) Brief in Support of Motion for New Trial.
- (9) Original record.

## **Facts**

The court finds the facts as follows. In the early morning hours of January 19, 2004, Kia Tasby and her boyfriend, the Petitioner, sought shelter in the apartment of Clay Fields and Kathy Curtis. Clay and Kathy both said the Petitioner and Kia began arguing with each other almost immediately upon entering their apartment. (Tr. II 88 & 131). The argument escalated very quickly, as recounted by Kathy. Petitioner began choking Kia. Ms. Curtis and Mr. Fields were able to pull the Petitioner off of Kia. The medical examiner found marks on Kia's neck consistent with having been choked, markings that were visible in a picture taken at the crime scene. (Tr. III 30) The force applied by the Petitioner was so great it literally pulled Kia up off a chair and his hands on her neck caused her to be suspended in the air. (Tr. II 132) After the Petitioner let her go, Kia ran into the kitchen, but Ms. Curtis remained near the foot of the bed that was just outside the kitchen entry (S.E. 7) standing beside the Petitioner. (Tr. II 133).

Mr. Fields followed Kia into the kitchen, where she picked up a knife and a small pot. (Tr. II 90). Kia never threatened to use the knife and Mr. Fields said he was "easily" able to talk

Kia into handing them over to him. (Tr. II 91). Ms. Curtis who remained beside the Petitioner, said that while this transpired she saw the Petitioner take out his pistol and hold it behind his back. (Tr.II 135).  When the victim walked out of the kitchen and reached down for a level laying on the floor, Ms. Curtis stepped in front of the Petitioner. (Tr. II 137; S.E. 2). As Ms. Curtis bent over to grasp the level, the Petitioner reached over her and fired at Kia.

    Ms. Curtis' head was so close to the pistol that when it fired she thought she had been shot. (Tr. II 139).  Mr. Fields could see Kia from the kitchen and he said the level was beside her leg when the first shot was fired. (Tr. II 123).  Similarly, Ms. Curtis reported that Kia was never able to raise the level above her waist before being shot.  (Tr. II 139).  When Mr. Fields asked why the Petitioner shot Kia, he replied, "fuck her". (Tr. II 95 & 141).  Petitioner then exclaimed, "fuck it" and walked out of the apartment.  Id.

## I.  Sufficiency of the Evidence

    In the Petitioner's third and final grounds for relief, he argues that the Oklahoma Court of Criminal Appeals(OCCA) erred in denying his arguments regarding sufficiency of the evidence. The place within his direct appeal brief which challenged the degree to which the State's evidence established guilt was within Proposition I.  Though the proposition was framed in the context of ineffective trial counsel, the sufficiency of evidence was challenged and the strength of the evidence was cited by the OCCA in rejecting the proposition.

First, it should be noted there are only two grounds upon which federal habeas relief can be granted. Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The court finds the OCCA's rejection of this claim was not contrary to clearly established law. In <u>Bell v. Cone</u>, 535 U.S. 685 (2000), clarification was given to the deference that should be afforded the state court determination originally articulated in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). The Supreme Court made the following observations:

> As we stated in <u>Williams</u> § 2254 (d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decision but unreasonably applies it to the facts of the particular case.
>
> The focus of the later inquiry is on whether the

> state court's application of clearly established
> federal law is objectively unreasonable, and we
> stressed in Williams that an unreasonable
> application is different from an incorrect one.
> (a federal habeas court may not issue a writ under
> the unreasonable application clause "simply
> because that court concluded in its independent
> judgment that the relevant state-court decision
> applied clearly established federal law
> erroneously or incorrectly") Cone at 694
> (internal citations omitted).

The Tenth Circuit Court of Appeals, citing Cone, held that "to deny Petitioner relief on this claim, we consider only whether the OCCA did so in an objectively reasonable manner." Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). As will be discussed herein, the OCCA's rejection was objectively reasonable and was consistent with clearly established federal law. The standard of review for a sufficiency of evidence claim was set forth in Jackson v. Virginia, 443 U.S. 307, 318-319 (1979) which stated "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Judicial review of a habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).

The OCCA gave detailed analysis in rejecting the Petitioner's first proposition which makes it clear that the trier of fact make a rational decision to convict.

> When weighed again evidence showing that Appellant
> did not have reasonable grounds to believe killing

5

> the victim was necessary, his self defense claims fail. Fields and Curtis testified that the victim was not wielding a weapon at the time she was shot by Appellant. At most, she held a carpenter's level to her side. While she may have held a knife or small cooking pot prior to the shooting she had been persuaded by Fields to surrender those items prior to the shooting. The evidence showed Appellant initiated the physical altercation and if it had not been for the intervention of Curtis and Fields, Appellant would have choked the victim to death prior to the shooting. Other evidence showed Appellant reached around Fields to shoot the victim, and that the gunshot to the neck would have caused the victim to collapse immediately. His lack of remorse was evident in the expeltives uttered after the shooting and the fact that he left without rendering aid. (Exhibit 3 at 6).

The evidence of guilt, as discussed in the State's direct appeal brief, consisted of strong eyewitness testimony and physical evidence supporting the same.

> the "evidence" of self-defense began and ended with the defendant's statement that the victim came at him with a skillet. (Tr. III at 158). Not only is the statement incorrect, even if it were true it would not form the basis for a reasonable self-defense claim in the present case. The statement was demonstrably false because there was no skillet and there was no testimony from the eyewitnesses about ever seeing the victim holding a skillet, much less wielding one as a weapon. Kathy testified that from where she and the defendant stood you could not see Kia and Clay in the kitchen, but they could hear rattling of kitchenware and could hear Clay calmly having her give items back to him. (Tr. II at 135). Clearly, the defendant spun from his auditory imagination the notion that Kia came out of the kitchen with a common item like a skillet, in the attempt to justify the shooting. The evidence negates the defendant's supposition.
>
> The evidence of guilt is even more compelling when

6

considering the undisputed forensic and medical
testimony presented by the State.  The physical
evidence shows that the defendant reached over
Kathy and fired his first shot at a downward angle
into Kia's chest.  The trajectory of this bullet
was documented and photographed by OSBI Agent Iris
Dalley.  (Tr. III at 93; S.E. 19-21). The medical
examiner deduced that the "neck" shot which
severed the victim's spinal cord would have caused
her to collapse instantly, whereas the "chest"
shot would have taken a minute or two to prove
fatal.  (Tr. III 32 & 53).  Consequently, it was
the first shot which was fired at a sharp downward
angle into the victim's chest.  The second shot
was likely on the same trajectory path, but the
bullet did not exit the victim's clothing.  (Tr.
III 104-05; S.E. 16-18).

There is no reasonable doubt that the shooting was
not an act of self-defense.  The victim never
attacked the defendant, nor did she ever use a
weapon against him.  When Kia angrily grabbed
implements in the kitchen after having been
choked, her friend Clay was able to talk her into
giving them back.  When she came out of the
kitchen, even though Kia reached for a level in
the floor, she was unable to even raise the tool
above her waist before she was shot.  Even had she
raised the level in anger, the defendant was in no
danger since Kathy was still standing between them
and the defendant was still holding the loaded
pistol behind his back.  Importantly, the
defendant never said anything about seeing a level
during his ninety-minute long statement to the
police. (Tr. III 160 & 164).  He did admit to
Detective Stites however, that Kathy was standing
between himself and Kia when she walked out of the
kitchen.  (Tr. III 178).

Even though Kathy was in a protective position,
the defendant seized the opportunity when she bent
down, sticking his right arm up and shooting over
Kathy, downward into Kia's chest.  The medical and
forensic evidence show this was the only way the
shooting could have occurred.  The two
eyewitnesses never saw Kia become physically
violent toward the defendant.  The jury was
instructed that "self-defense is not available to

7

> a person who was the aggressor."(O.R. 235).
> Additionally, when asked who started the physical
> altercation, Kathy's answer was succint: "He did."
> (Tr. II 155). The closest Kia ever got to
> "arming" herself was grabbing a knife and a small
> cooking pot, which Clay said he was easily able to
> talk her into surrendering, The defendant never
> even saw either item in her hand, because he was
> outside the kitchen with Kathy , who said they
> could hear clanging noise in the kitchen as if
> things were picked up and put back. (Tr. II 135).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." Case v. Mondagon, 887 F. 2d 1388, 1392 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." Wright v. West, 505 U.S. 277, 296 (1992) (citing Jackson, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record-- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing United States v. Edmondson, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the

conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 498 U.S. 904 (1990) (citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)).

After careful review of the record, this court finds the evidence was sufficient under the standard of Jackson v. Virginia, and the determination by the Court of Criminal Appeals was consistent with federal law. This ground for habeas relief fails.

## II. New Evidence

In his first two grounds for relief, the Petitioner argues that he is entitled to federal habeas relief based on "new" evidence. Specifically, though he labels his first ground in standard language regarding the state court decision being contrary to clearly established federal law, he then references his attached post-conviction relief pleadings. He lists as supporting facts the "State court's orders resulted in decisions based on unreasonable determination of the facts, in light of the new uncontested new evidence offered." (Petition at 5). Though no label is given for Ground Two, Petitioner lists under supporting facts this single statement: "claims relief on newly discovered evidence that was withheld (sic) by the state." Id. at 6. However, the OCCA reviewed these issues, raised for the first time in the post-conviction pleadings that could have or should have been raised in direct, and that they were in no way "newly discovered" evidence. (Exhibits 4, at 1-2). Consequently, the OCCA found the issues were procedurally barred from review.

9

In Coleman v. Thompson, 501 U.S. 722, 750 (1991), the Supreme Court stated: "In all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Oklahoma has consistently applied a procedural bar to issues that could have been raised on appeal or in a prior request for post-conviction relief. 22 O.S.A. § 1080, et. seq. In Moore v. Reynolds, 153 F. 3d 1086, 1097 (10th Cir. 1998), it was held that the Oklahoma bar from failing to raise an issue on direct appeal or in the subsequent post-conviction application is an independent and adequate state ground.

For the Petitioner to overcome the procedural bar, he must demonstrate cause for the default and actual prejudice as a result of the violation of federal law. Petitioner has failed to carry his burden to demonstrate "cause" for this default. The Supreme Court has defined "cause" under the cause and prejudice test as "something external to the Petitioner that cannot fairly be attributed to him." Coleman, 501 U.S. at 753, quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). In Murray, the Court noted that cause could be demonstrated by "showing that the factual or legal basis for a claim was not reasonably available to counsel,...or that 'some interference by officials'...made compliance impracticable..." Murray, 477 U.S. at 488.

Petitioner's first two grounds for review allege that these issues are based on "newly discovered evidence" that could only be raised for the first time on post-conviction relief. To

support this proposition he references his post-conviction relief pleadings. In review of the post-conviction relief pleadings attached to the Petition it is clear the Oklahoma Court of Criminal Appeals was correct when they concluded there was no newly discovered evidence set forth in the post-conviction relief claims.

For example, his first post-conviction relief proposition starts with the words "newly discovered evidence" but proceeds to make a legal argument about the process of compiling the jury pool from which Petitioner's jury was drawn. He alleges that 85% of those serving and eligible jurors were excluded. Upon review, the OCCA found: "Petitioner has not established that the evidence was not or could not have been discovered prior to his trial or his appeal." The Court finds that there were no new facts in the first post-conviction relief claims and the Oklahoma Court of Criminal Appeals was correct in finding there was no issue to re-litigate.

The same pattern emerges in the page-long second post-conviction relief proposition, where he starts with a legal argument regarding the defunct Truth-In-Sentencing matrices of 18 to 60 years for Murder. Petitioner then jumps into an incomprehensible sentence regarding competency before taking off in yet another direction by asserting: "An evidentiary hearing must be held to allow Petitioner an opportunity to present undisputable newly discovered witnesses and evidence discrediting state's witnesses and warranting a new trial, or reduction in sentences to 18 years each." These conclusory allegations can not warrant federal habeas corpus relief. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Within the post-conviction relief the Petitioner next argues that he is entitled to habeas relief because he has "New evidence and Supreme Court rulings, shows defendant did not actually have control of the firearm when it discharged, and did not, could not have actively employed it, but was only holding it when stated witnesses caused it to accidently misfire, or discharge." One is left to imagine what the evidence might have been that Petitioner was merely "holding" the gun while a third party caused it to fire. It appears to this court this argument presents no new facts.

Additionally, the Petitioner does not try to identify a new fact beyond invoking the phrase "newly discovered" in his seventh and eight propositions, alleging speedy trial and Truth-In-Sentencing issues. His ninth and tenth propositions deal with mitigating issues in sentencing, which do not specify facts or explain how they were new. In his eleventh proposition the Petitioner reached the pinnacle of a generalized "fact" claim, when he lists several professors who have studies of "the human memory" that "totally discredits each of the state's witnesses..." In summary, none of the alleged newly discovered evidence claims raised in the Petitioner's attached post-conviction relief pleadings actually establish "cause" for their belated bringing.

Since Petitioner has failed to establish "cause" for following state procedural rules, there is no need to discuss prejudice. <u>Klein v. Neal</u>, 45 F.3d 1395, 1400 (10th Cir. 1995). Alternatively, there is no prejudice from barring Petitioner's very general claims. To the extent he is trying to dispute the fact that the shooting was intentional, the OCCA's findings as to the facts in the record clearly rebut such a notion. The state

court very accurately characterized these claims when they concluded: "Petitioner's newly discovered evidence consists of his own bald assertions, and he offers nothing to support these assertions."

Finally, the only other way Petitioner could overcome the procedural bar is by a showing of a "fundamental miscarriage of justice" which requires proof of "actual innocence". The Tenth Circuit analyzed the matter as follows: Cases involving a fundamental miscarriage of justice are extrodinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. <u>Gilbert v. Scott</u>, 941 F.2d 1065, 1068 (10th Cir. 1991). The Supreme Court has held that an actual innocence claim requires "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). The Tenth Circuit has noted that to prevail, a Petitioner must identify evidence that affirmatively demonstrates his innocence and he is therefore required to provide evidence that affirmatively demonstrates his innocence and he is therefore required to provide evidence that does more than simply "undermine the finding of guilt against" him or her. <u>Phillips v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). There is no legitimate claim of actual innocence to overcome a procedural bar on the "newly discovered evidence" claims from Petitioner's post-conviction relief that are referenced in his first two grounds for relief. Consequently, Grounds one and two are barred from federal habeas review.

**ACCORDINGLY**, petitioner's petition for a writ of habeas corpus is **DENIED**, and this action is, in all respects, **DISMISSED**.

**IT IS SO ORDERED** this 29th day of June 2010.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma